

# The Attorney General of Texas

July 5, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable William P. Clements, Jr.
Governor of the State of Texas
Office of the Governor
State Capitol Building
Austin, Texas    78711

Opinion No. MW-484

Re:    Texas    Deepwater    Port
Authority

Dear Governor Clements:

You ask whether there is statutory authority for the Texas Deepwater Port Authority to issue tax exempt industrial revenue bonds to finance the construction of a privately owned and controlled deepwater port facility. As noted in your letter, the pertinent statutory provisions governing Texas Deepwater Port Authority, an agency of the state of Texas, are sections 19.001, et seq. of the Water Code [hereinafter the "act"]. The act does not specifically mention "tax exempt industrial revenue bonds" and we note that the determination of whether interest on a particular bond issue is tax exempt is a matter of federal law to be determined by the Internal Revenue Service.

Section 19.001 of the act provides:

(1)  Texas urgently needs an offshore deepwater port capable of accommodating supertankers for the importation of crude oil and other fluid commodities that may be carried in ships of that size;

(2)  it is most desirable for private enterprise to own, construct, and operate such an offshore port;

(3)  in the absence of any active and viable plan to develop a deepwater, offshore port by private enterprise, the State of Texas should construct such a facility, which should be self-supporting and whose design, construction, and operation should be carried out by private companies under contract;

(4) protecting the environment is essential to the proper operation of such a port;

(5) the credit of the State of Texas shall not be pledged to finance such a port; and

(6) the Texas Deepwater Port Authority be created to implement this policy.

Section 19.131 provides in subsection (1) that the authority may borrow money from time to time for any corporate purpose or in the aid of any corporate purpose and in subsection (3) "issue and sell bonds and provide the terms and conditions for repayment with interest and rights of the bondholders." Sections 19.132 and 19.134, respectively, provide for the form of the bonds and the security therefor. The latter section provides that the bonds may be secured by a "pledge of all or any part of the revenues or receipts of the authority or by the revenues of any one or more... contracts... specified by the resolution of the board." Subchapter (D) of the act states further the powers and duties of the authority. Section 19.054 provides in subsection (b) that the authority "may enter into contracts or agreements with any person, corporation, trust, or partnership for the financing, construction, operation, maintenance, and sale by installment or otherwise of a deepwater port or any facilities relative to a deepwater port." (Emphasis added).

Therefore, in response to your initial question, there is ample statutory authority for the authority to issue revenue bonds to construct a deepwater port and to sell the deepwater port by installment sale or otherwise to a private corporation. The act authorizes the authority to pledge the receipts under the installment sale contract to the payment of the bonds. You also ask that should our answer be in the affirmative that we cite statutory authority for the authority to issue bonds to finance the construction. This we have done in treating the first question.

You next ask, "Is such statutory authority constitutional?" Section 19.011 of the act recites that "[T]he Texas Deepwater Port Authority is created as an agency of the state and pursuant to Article XVI, Section 59, Subsection (a) of the Texas Constitution." It is our opinion that the creation of the Texas Deepwater Port Authority is a proper exercise of the constitutional mandate in the aforementioned section of the constitution to "pass all such laws as may be appropriate... [in] [t]he conservation and development of all of the natural resources of this State including... the navigation of its inland and coastal waters." This section of the constitution declares that "the preservation and conservation of all such natural resources of the State are each and all... public rights and duties...." Tex. Const. art. XVI, §59.

Sections 50, 51 and 52(a) of article III of the Texas Constitution read as follows:

> Sec. 50.    The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever.

> Sec. 51.    The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever....

> Sec. 52.    (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

Sections 19.036(b) and (c) and 19.149(a) and (b) of the act follow these mandates of the constitution, viz:

Section 19.036

> (b) No license or permit may be requested or accepted by the authority nor may the state be a party to a license or permit which would impose on the State of Texas or the authority any liability or financial obligation by virtue of contract, tort, or otherwise unless that liability or financial obligation is fully indemnified without expense of state funds.

> (c) With the exception of the initial appropriations from the General Revenue Fund to the Texas Deepwater Port Authority and revenues of the authority, the state may not pledge its faith and credit or contribute any state funds to a

project of the Texas Deepwater Port Authority or for expenses of carrying out the powers and duties of the authority. Bonds issued under the provisions of this chapter shall not be deemed to constitute a debt of the state or a pledge of the faith and credit of the state. The authority is not authorized to incur any liability or financial obligations which cannot be serviced from the revenues of the authority or from the initial appropriations.

Section 19.149

(a) The provisions of this chapter shall not be construed to authorize the giving or lending of the credit of the state or to be a pledge of the credit of the state for the payment of any bonds or notes issued under the provisions of this chapter, and the purchasers and successive holders of any bonds or notes shall never have the right to demand payment from any money or revenues of the authority except those pledged to the payment of bonds or notes.

(b) This chapter shall not be construed as obligating this state to the holders of any of those bonds or notes nor to constitute a contract on the part of this state to make money available for any of the authority's needs.

This opinion is consistent with over thirty years of interpretation by this office in approving bond issues authorized by similar statutes for port authorities, river authorities and cities in providing funds for the construction of such projects as port facilities, pollution control facilities, airports, and electric generation plants. All such facilities have been construed as being for a public purpose and within the framework of the Texas Constitution.

We specifically do not rule on a particular financial plan or on any particular contract at this time. Such review and decision will be made when and if bonds are submitted for approval as required by section 19.141 of the act.

## S U M M A R Y

The Texas Deepwater Port Authority has been created as an agency of the state of Texas by

sections 19.001, <u>et seq.</u> of the Water Code. Such legislation grants authority to such agency to design, construct, and operate a deepwater port, to sell such deepwater port by installment sale or otherwise, and to issue revenue bonds for such purpose to be secured by the receipts payable to the authority pursuant to contracts, including an installment sale contract. Such legislation is consistent with the requirement in article XVI, section 59 of the Texas Constitution, requiring the legislature to pass all laws as may be appropriate for the conservation of natural resources.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by John W. Fainter, Jr.
First Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
John W. Fainter, Jr.
Patricia Hinojosa
Susan Lee Voss